**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM R. HARRIS, JR.,** | : | |
| **Plaintiff,** | : | **Case No. 2:04-cv-1051** |
| **v.** | : | **Judge Holschuh** |
| **CITY OF CIRCLEVILLE, et al.,** | : | **Magistrate Judge Kemp** |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

The above-captioned case is scheduled for trial on April 12, 2010. The relevant facts are set forth in this Court's January 23, 2008 Memorandum Opinion and Order. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, alleging use of excessive force, deliberate indifference to his serious medical needs, and violations of his Fourteenth Amendment right to equal protection. He also asserts a claim of assault and battery. Remaining defendants include Circleville police officers Glenn R. Williams, II, Robert Gaines, and Phillip Roar. This matter is currently before the Court on Defendants' objections to the Magistrate Judge's Order granting Plaintiff's motion for leave to disclose an additional expert witness (Doc. 157) and on numerous motions in limine filed by both parties. (Docs. 144-149, 153-155).

## I. Defendants' Objections to Magistrate Judge Kemp's Order Granting Plaintiff's Motion for Leave to Disclose an Additional Expert Witness

On January 13, 2010, Magistrate Judge Kemp granted Plaintiff's motion for leave to disclose an additional expert witness, rehabilitation counselor George W. Cyphers, who plans to testify as to Plaintiff's life-care planning needs. Magistrate Judge Kemp noted that although Plaintiff had not explained the reason for the delay in disclosing Cyphers as an expert witness, good cause

nevertheless existed for modifying the previous scheduling order as required by Federal Rule of Civil Procedure 16.

Magistrate Judge Kemp noted that Plaintiff's counsel sent Defendants' counsel an email message on June 22, 2006, giving informal notice that he had retained Cyphers, a life care plan expert. Even though this was more than three months past the established deadline for disclosing expert witnesses, Defendants' counsel raised no objection at that time. Magistrate Judge Kemp also found that it could "reasonably be inferred from the correspondence submitted that both parties were comfortable with deferring various aspects of damage discovery until a date well after the cutoff date set by the Court." (Order at 3). He found that the parties had impliedly agreed to postpone certain expert discovery pending a ruling on dispositive motions and pending Defendants' appeal. Finally, he found that Defendants would not suffer any prejudice if Cyphers were allowed to testify. Cyphers's written report was given to Defendants five months before trial, and Defendants still had ample time to depose him and to retain a competing expert witness if necessary.

Defendants filed a timely objection to Magistrate Judge Kemp's Order. Because this involves a nondispositive matter, the Court may set aside that Order only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Defendants have failed to satisfy that high standard.

Defendants first maintain that Magistrate Judge Kemp erred in concluding that Plaintiff had established good cause for failing to timely disclose Cyphers as an expert witness. They note that Plaintiff made no mention at all of Cyphers until June of 2006, three months past the deadline for disclosing expert witnesses. Defendants first argue that their failure to object to the late disclosure at that time should not be deemed as acquiescence because the disclosure was "imbedded [in an email message] between paragraphs addressing much more urgent matters." (Obj. at 5). They also

deny that the parties had impliedly agreed to extend discovery deadlines related to damages, as evidenced by the fact that both parties had sought and received previous extensions of the deadlines, and by the fact that Plaintiff did timely disclose other expert witnesses on the topic of damages. Defendants also argue that Magistrate Judge Kemp erred in concluding that they would suffer no prejudice by Plaintiff's late disclosure. Citing <u>Sommer v. Davis</u>, 317 F.3d 686 (6th Cir. 2003), they argue that disclosure of a new expert witness beyond the discovery deadline is inherently prejudicial, rendering Magistrate Judge Kemp's Order contrary to law.

The Court finds that Magistrate Judge Kemp's Order is neither clearly erroneous nor contrary to law. By failing to object when Plaintiff disclosed Cyphers as an expert witness in June of 2006, Defendants impliedly waived any argument concerning late disclosure. Moreover, based on the evidence in the record, it appears that the parties did contemplate postponing certain discovery related to damages pending the resolution of dispositive motions and interlocutory appeals. Under these circumstances, Magistrate Judge Kemp did not err in concluding that good cause existed for modifying the scheduling order.

The Court also finds that Magistrate Judge Kemp did not err in concluding that Defendants would not be prejudiced by the late disclosure. Defendants have been on notice since June of 2006 that Plaintiff had retained George Cyphers to testify as an expert witness. As Magistrate Judge Kemp noted, they received his updated written report in November of 2009, giving them five months before trial to depose him and to retain a competing expert witness if necessary. Because Defendants have the opportunity to conduct additional discovery and to retain their own expert witness, there is nothing inherently prejudicial about allowing Cyphers to testify.

Because Magistrate Judge Kemp's January 13, 2010 Order is neither clearly erroneous nor contrary to law, the Court **OVERRULES** Defendants' objections.

## II.      Motions in Limine

### A.      Relevant Law

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. See Indiana Ins. Co. v. General Elec. Co., 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997)). Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." Koch v. Koch Indus., Inc., 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); accord Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. Indiana Ins. Co., 326 F. Supp.2d at 846; Koch, 2 F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. Indiana Ins. Co., 326 F. Supp.2d at 846. Ultimately, whether a motion in limine is granted or denied is a matter left to the sound discretion of the Court. See Hesling v.

<u>CSX Tranp., Inc.</u>, 396 F.3d 632, 643-44 (5th Cir. 2005) (citing <u>United States v. Sharpe</u>, 193 F.3d 852, 867 (5th Cir. 1999); <u>Buford v. Howe</u>, 10 F.3d 1184, 1188 (5th Cir. 1994)).

**B.     Plaintiff's Motions in Limine**

**1.     To Exclude Evidence Related to Plaintiff's Conduct Prior to Arriving at the Circleville Jail**

Plaintiff asks the Court to exclude all evidence related to his conduct prior to the time he arrived at the Circleville jail, including the video recordings made from the dashboard camera in the Ohio State Highway Patrol cruiser.  Although Plaintiff initially cooperated with the troopers, he admits that after the troopers told him that he had an outstanding arrest warrant -- a statement that everyone now agrees was based on a case of mistaken identity -- and would be taken into custody and charged with DUI, he became upset and cursed at the troopers.

Plaintiff argues that this evidence is irrelevant because his claims are based solely on the conduct of the Circleville police officers *after* he arrived at the Circleville jail.  Plaintiff notes that in determining the reasonableness of a particular use of force, the court "must consider only the facts the officers knew at the time of the alleged Fourth Amendment violation." <u>Dickerson v. McLellan</u>, 101 F.3d 1151, 1155 n.3 (6th Cir. 1996).  In this case, Defendants were aware that the troopers were bringing in a "resistor," but they did not know what had transpired during the course of the traffic stop.  (Gaines Dep. at 60; Roar Dep. at 22;  Williams Dep. at 22).

Defendants argue that evidence of what occurred prior to the arrival at the jail is relevant because it is probative of Plaintiff's state of mind as he entered the jail.  It shows that he was disrespectful, verbally abusive, and challenging the troopers' authority.  This behavior allegedly continued once he arrived at the jail.

It goes without saying that Plaintiff's conduct *after* he arrived at the jail may be considered in determining whether the force used was reasonable. Defendants were able to observe him from the time he entered the sallyport. But in the Court's view, pursuant to the holding in <u>Dickerson</u>, evidence of what transpired during the traffic stop and during the ride to the Circleville jail is irrelevant to Plaintiff's claims and must be excluded for that reason. The reasonableness of Defendants' conduct must be judged based only on what they knew at the time they used force against him. Here, they knew only that the troopers were bringing in a "resistor."[1] Because evidence of what happened *prior* to Plaintiff's arrival at the jail is irrelevant, the Court need not address Plaintiff's additional argument that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. For the reasons stated, the Court **GRANTS** Plaintiff's motion to exclude evidence related to Plaintiff's conduct prior to arriving at the Circleville jail.

> ### 2. To Exclude Argument or Testimony that Plaintiff Did Not Suffer Physical Harm as a Result of Being Dragged to His Cell or by the Delay in Providing Him with Medical Attention

Defendants' expert witness, Dr. Patrick McCormick, has concluded that Plaintiff suffered no additional physical harm as a result of being dragged to his cell, and that Plaintiff suffered no additional physical harm as a result of Defendants' delay in seeking treatment. Plaintiff does not intend to present any evidence to the contrary. Plaintiff argues that because McCormick's testimony is not needed to refute any claim by Plaintiff and is not relevant to the question of whether Defendants were deliberately indifferent to Plaintiff's serious medical needs, it should be excluded.

---

[1] Defendants also argue that, to the extent Plaintiff is likely to challenge being labeled as a "resistor," this evidence is necessary to explain why he was characterized as such. Plaintiff, however, does not plan to challenge the basis for this label. Regardless of whether that characterization is accurate, Defendants were told that the troopers were bringing in a "resistor." Plaintiff does not object to the admissibility of that statement.

A claim of deliberate indifference to serious medical needs has both an objective and subjective component. The objective component requires the plaintiff to show a sufficiently serious medical need, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004). The subjective component requires the plaintiff to show that the officers had a "sufficiently culpable state of mind" in denying medical care. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Plaintiff notes that in cases involving an obvious need for medical treatment, a constitutional violation may be found regardless of whether the delay in providing treatment had a detrimental physical effect.

> Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the *delay alone* in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity.

Blackmore, 390 F.3d at 899 (emphasis added). "[I]t is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to [plaintiff] by subjecting him to unnecessary infliction of pain." Id. In cases where there is an obvious need for medical care, a constitutional violation exists if the plaintiff actually experiences the need for medical treatment, and the need is not addressed within a reasonable time frame. Id. at 900.

Defendants argue that, in Plaintiff's case, a reasonable jury could find that there was no obvious need for medical treatment. Plaintiff would therefore have to prove that the delay in

treatment had a detrimental effect. According to Defendants, Plaintiff's need for medical treatment was not obvious because, based on the slight amount of force they used, Plaintiff's alleged paralysis seemed impossible. Some of them thought he was faking an injury.

The Court rejects Defendants' argument. The Court has already concluded that Plaintiff has satisfied the objective component of his claim. It held:

> it would have been obvious to any layperson that Plaintiff needed prompt medical attention. Even though there was no visible external injury, Plaintiff's inability to move his arms and legs, combined with his pleas to the officers to stop shocking him, clearly signaled a serious problem. *No reasonable jury could find otherwise.*

(Jan. 23, 2008 Mem. Opinion & Order at 23) (emphasis added). The Court, however, found that genuine issues of material fact precluded summary judgment on the *subjective* component of this claim. A reasonable jury could find that Defendants lacked the requisite culpability since Plaintiff's alleged injury seemed completely inconsistent with the amount of force used. (Id. at 24-26). Defendants' argument -- that Plaintiff's need for medical treatment was not "obvious" because Plaintiff's alleged paralysis was not consistent with the amount of force used -- clearly goes to the subjective component of Plaintiff's claim.

Defendants next argue that, even if the need for medical care was obvious, the jury may consider the lack of a detrimental effect in determining whether the delay in providing medical treatment was reasonable. They note that while Blackmore dictates that a plaintiff is not *required* to submit evidence of harm as a result in the delay in treatment, there is no authority that *prohibits* a jury from considering the *lack* of a detrimental effect in determining whether the delay was reasonable. The Court fails to see how such evidence could be relevant. Because Plaintiff's need for medical care was obvious, Defendants will be liable if they intentionally delayed access to

medical care, regardless of whether the delay had a detrimental effect. See Blackmore, 390 F.3d at 899.

Finally, Defendants argue that the lack of detrimental effect of the delay is relevant to Plaintiff's claim of punitive damages. In order to recover punitive damages, Plaintiff must prove that Defendants acted with an "evil motive or intent" or "reckless or callous indifference" to Plaintiff's rights. See Smith v. Wade, 461 U.S. 30, 56 (1983). Defendants maintain that the fact that Plaintiff suffered no physical harm as a result of the delay goes directly to the question of whether they acted with an evil motive, intending to punish Plaintiff.

The Court rejects this argument also. An award of punitive damages is based on Defendants' state of mind. See Preferred Properties, Inc. v. Indian River Estates, Inc., 276 F.3d 790, 799 (6th Cir. 2002). In determining whether punitive damages are appropriate, a jury may consider only what the officers knew at that time. In this case, Defendants did not know that Plaintiff suffered from cervical stenosis. Neither did they know that a delay in seeking medical treatment would cause no additional physical harm. This evidence is therefore irrelevant in determining whether they acted with an evil motive or with reckless or callous indifference to Plaintiff's constitutional rights.

For all of these reasons, the Court **GRANTS** Plaintiff's motion to exclude evidence that he suffered no physical harm as a result of being dragged to his cell or by the delay in seeking medical attention.

### 3. To Exclude Evidence of BCI or FBI Investigation

The Bureau of Criminal Investigation ("BCI") and the Federal Bureau of Investigation ("FBI") investigated the events surrounding Plaintiff's injury but decided not to file criminal charges against the officers involved. Plaintiff seeks to exclude evidence of the criminal investigation and

its outcome. He argues that it is irrelevant to his civil claims, and that the probative value of such evidence is substantially outweighed by the danger of confusing the issues. There is a risk that the jury could assign undue weight to the fact that no criminal charges were brought against the officers, and unfairly conclude that because the officers were not prosecuted, Plaintiff's civil claims must be meritless. Defendants do not intend to introduce any evidence of the FBI or BCI investigation at trial. Plaintiff's motion is therefore **DENIED AS MOOT**.

### 4. To Exclude Argument or Testimony Regarding Plaintiff's Cervical Stenosis

Citing Federal Rules of Evidence 402 and 403, Plaintiff also seeks to exclude evidence that he suffers from cervical stenosis, a congenital narrowing of the spinal canal. Plaintiff maintains that if the jury determines that the officers used excessive force during the takedown maneuver, they are liable for all consequences regardless of whether Plaintiff was more susceptible to injury because of his congenital defect. Therefore, according to Plaintiff, there is no need for the jury to know of his condition. Plaintiff also seeks to avoid juror confusion about the cause of his injury by excluding evidence of his cervical stenosis. He argues that, although his congenital condition may have made him more susceptible to a spinal cord injury, there is no evidence that his injury was caused by anything other than the force used by Defendants.

Defendants argue that evidence of Plaintiff's cervical stenosis is directly relevant to the question of liability and damages on the claim of excessive force, and that the probative value of this evidence is not substantially outweighed by the alleged risk of juror confusion as to causation.

Plaintiff denies that evidence of his condition is relevant to the question of liability. If the amount of force used was objectively reasonable, there is no constitutional violation regardless of the severity of Plaintiff's injury. However, if the use of force was excessive, Defendants are liable

for all consequences of their conduct. The jury must decide whether the officers' use of force was objectively reasonable based only on the facts and circumstances known to them at the time. See Dickerson, 101 F.3d at 1155 n.3. Because the officers did not know that Plaintiff suffered from cervical stenosis, this condition plays no part in determining whether the force used against him was objectively reasonable.

One of the cases cited by Defendants nicely illustrates this concept. In Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002), the court held:

> Rodriguez's earlier surgery made what otherwise would be a common non-excessive handcuffing technique (that ordinarily would be painful but cause minimal injury) a maneuver that caused severe injury and tragic results. This distinction, however, is not important legally and does not preclude a conclusion that Rodriguez has shown no constitutional violation: no evidence has been presented that Sgt. Farrell knew of plaintiff's recent elbow surgery or, more important, knew that handcuffing plaintiff would seriously aggravate plaintiff's preexisting condition. We do not use hindsight to judge the acts of police officers; we look at what they knew (or reasonably should have known) at the time of the act. What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time. *See Silverman*, 694 F.2d at 1096-97 (concluding that force used was not, as a matter of law, excessive even though arrestee died of heart attack during arrest).

Id. at 1352-53 (internal footnote omitted).[2] The Court agrees with Plaintiff that, in this case, because the officers did not know of Plaintiff's condition, it is irrelevant in determining the issue of liability.

---

[2] On the other hand, if the officers know of a pre-existing condition, they are expected to take that into consideration in determining how much force is appropriate. See Stainback v. Dixon, 569 F.3d 767, 772 (7th Cir. 2009) ("an officer's otherwise reasonable conduct may be objectively unreasonable when the officer knows of an arrestee's medical problems.").

Plaintiff also denies that his condition is irrelevant to a determination of damages. As to his claim for compensatory damages, Plaintiff argues that he is the quintessential "eggshell" plaintiff and "the tortfeasor must take the injured party as it finds him, and is liable for the full extent of the harm caused by its negligence, even if a more 'normal' plaintiff would not have suffered nearly as much." Meyers v. Wal-Mart Stores, East, Inc., 257 F.3d 625, 632 (6th Cir. 2001). If Defendants used excessive force, they are liable for the full extent of Plaintiff's injury. Plaintiff therefore argues that his pre-existing condition is irrelevant in determining damages.

Defendants disagree. They note that Dr. McCormick testified that even if Plaintiff had not been injured as a result of the takedown maneuver at the Circleville jail, it is more likely than not that Plaintiff would have suffered some symptoms of his cervical stenosis at some point during the next ten years. (McCormick Dep. at 55). Based on this testimony, Defendants maintain that they are entitled to the following jury instruction:

> If you find for plaintiff, you should compensate plaintiff for any aggravation of an existing disease or physical defect or activation of a latent condition, resulting from such injury. If you find that there was such an aggravation, you should determine, if you can, what portion of plaintiff's condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make that determination, or if it cannot be said that plaintiff's condition would have existed apart from the injury, you should consider and make allowances in your verdict for the entire condition.

3 Fed. Jury Prac. & Instr. § 128.03 (5th ed.).

Plaintiff argues that this instruction is inapplicable because there is no basis for the jury to determine what portion of his injuries resulted from the "aggravation" of his condition. Plaintiff notes that Dr. McCormick testified that, although it was more likely than not that Plaintiff would have suffered some kind of neurological deficiency within the next ten years, the neurological

deficits "could be worse . . .could be subtle . . .could be the same. That would be hard to say." (McCormick Dep. at 57). Symptoms of Plaintiff's condition could be as subtle as a tingling sensation in his hands and feet. (Id. at 45). Plaintiff maintains that, under these circumstances, a jury could not possibly apportion damages and that he is, therefore, entitled to full damages, regardless of his pre-existing condition.

The Court agrees that, under the circumstances presented here, the proposed jury instruction is inappropriate because it would be nearly impossible for the jury to determine a proper apportionment of damages. It is entirely too speculative. Evidence of Plaintiff's condition is therefore irrelevant to a determination of compensatory damages.

Finally, Defendants argue that evidence of Plaintiff's cervical stenosis is relevant to his claim for punitive damages. Plaintiff's own experts have testified that the officers would have no reason to believe that the takedown maneuver they used would result in paralysis. Defendants maintain that because they did not know of Plaintiff's condition, and had no reason to believe that their conduct would result in a spinal cord injury, Plaintiff cannot show the requisite subjective "evil motive or intent" or "reckless or callous indifference" to Plaintiff's rights. See Smith, 461 U.S. at 56.

The Court agrees that evidence of Plaintiff's condition is relevant to the claim for punitive damages. Plaintiff argues that because the officers did not know of his condition, evidence of his cervical stenosis is irrelevant to their state of mind and plays no part in determining whether they acted with callous indifference. In the Court's view, however, Defendants are entitled to present evidence of their *lack of knowledge* of Plaintiff's pre-existing condition in order to support their claim that they never expected or intended that their conduct would result in such a severe injury to Plaintiff. Evidence that Plaintiff suffered from cervical stenosis and was more susceptible to

spinal cord injuries tends to make it less probable that Defendants acted with the culpability needed to support an award of punitive damages. It is therefore relevant and admissible under Federal Rule of Evidence 401.

Even if the Court were to find differently with respect to the issue of punitive damages, the Court would still deny Plaintiff's motion. Evidence of Plaintiff's cervical stenosis is crucial to complete the story of what happened and to put everything in context. "Evidence that is relevant to the background of the case is admissible for that purpose." Jonasson v. Lutheran Child and Family Services, 115 F.3d 436, 441 (7th Cir. 1997).

Moreover, excluding this evidence would be extremely prejudicial to Defendants. Under normal circumstances, the control tactics they used would not result in a spinal cord injury. But for Plaintiff's cervical stenosis, he very likely would have suffered little or no injury. If evidence of this condition is excluded, a jury could easily conclude that because the takedown maneuver resulted in paralysis, the force used must have been excessive. Plaintiff's concerns about a risk of jury confusion as to the cause of his injury can easily be alleviated with proper jury instructions. The Court therefore **DENIES** Plaintiff's motion to exclude evidence of his cervical stenosis.

### 5.     To Preclude Irrelevant Testimony Regarding Plaintiff's Children

Plaintiff asks the Court to exclude evidence that one of his four children was born out of wedlock. He argues that this information is completely irrelevant to his claims and is unfairly prejudicial. Defendants do not intend to introduce any such evidence at trial. Plaintiff's motion is therefore **DENIED AS MOOT**.

### 6.     To Exclude Testimony of Dr. Robert Forney and Any Evidence Related to Plaintiff's Blood Alcohol Content

Plaintiff also asks the Court to exclude evidence of the results of blood alcohol testing

conducted at Berger Hospital in Circleville, and testimony of Defendants' expert toxicologist, Dr. Robert Forney. Plaintiff was pulled over by the Ohio State Highway Patrol at 9:20 p.m. The blood test, taken at 1:10 a.m., indicated a blood alcohol content of .11. Dr. Forney intends to testify that this means that Plaintiff likely consumed 13 or more 12-ounce bottles of beer between 5:15 p.m. and time of his arrest. Plaintiff, on the other hand, testified that he consumed only 2 beers that evening. (Pl. Dep. at 49). Plaintiff also maintains that the results of the blood test are inconsistent with the results of the breathalyser test performed by the troopers when Plaintiff was pulled over at 9:20 p.m. Those test results indicated that Plaintiff's blood alcohol content was "right around the limit," *i.e.*, .08.

Plaintiff argues that his blood alcohol content is irrelevant to his claims. He contends that no matter what his blood alcohol content was, he had the right to be free from the use of excessive force and had the right to receive prompt medical attention for his serious medical needs. He also argues that this evidence is irrelevant because the reasonableness of Defendants' conduct must be determined based only on the knowledge they had at that time of the incident in question. See Dickerson, 101 F.3d at 1155 n.3. At the time of the incident in question, Defendants had no direct knowledge of Plaintiff's blood alcohol content. In support, Plaintiff cites to Cundiff v. Postel, No. 3:06-cv-437, 2008 WL 820030, at *4 (E.D. Tenn. March 25, 2008), in which the court excluded evidence of a § 1983 plaintiff's blood alcohol content. The court found that because the officers did not know plaintiff's blood alcohol content at the time excessive force was allegedly used, that evidence fell "outside the Court's reasonableness analysis" under Graham v. Connor, 490 U.S. 386 (1989).

Defendants argue that evidence of Plaintiff's blood alcohol content is relevant because it "provides scientific credibility" and confirms what they already knew, that Plaintiff was intoxicated when he arrived at the jail. They further argue that even though they did not know his exact blood alcohol content, his intoxication is relevant to the question of whether the force used against him was reasonable. In support, they cite to <u>Natalie v. Barnett</u>, No. Civ. A.97-1291, 1998 WL 175890, at *2 (E.D. Pa. April 2, 1998), in which the court found that "Plaintiff's level of intoxication was directly relevant to his conduct and mental state during the time of his arrest," and was probative on the issue of whether excessive force was used. Defendants maintain more force may be proper when an individual is "intoxicated and noncompliant." <u>See</u> <u>Davenport v. Causey</u>, 521 F.3d 544, 551 (6th Cir. 2008) (<u>citing</u> <u>Monday v. Oullette</u>, 118 F.3d 1099, 1104-05 (6th Cir. 1997)).

In the Court's view, under the circumstances presented here, there is no need for Defendants to present expert testimony simply to "confirm what the officers already knew." Based on their observations and experience, they knew that Plaintiff was intoxicated; in fact, they immediately took him to the "drunk tank." Defendants are certainly permitted to testify about their perceptions of Plaintiff's degree of intoxication. However, the Court agrees with the reasoning set forth in <u>Cundiff</u>. Because the officers did not know Plaintiff's blood alcohol content at the time they used force against him, this evidence cannot be considered in determining whether the force used was objectively reasonable.

This does not necessarily mean that the evidence is not admissible for a different purpose. Defendants argue that this evidence is also relevant and admissible for impeachment purposes because it is "highly probative of plaintiff's ability to accurately recall and testify to the events that took place during his arrest." <u>Natalie</u>, 1998 WL 175890, at *2. <u>See also</u> <u>D'Agastino v. City of</u>

Warren, 75 F. App'x 990, 994 (6th Cir. 2003) (recognizing that the credibility of plaintiff's testimony may be adversely affected by the fact that his blood alcohol level was .26 during the incident in question). Plaintiff does not respond to this argument, other than to note that, in this case, there is little dispute as to what happened during the incident in question because much of it was captured on videotape. Plaintiff also generally argues that evidence of his blood alcohol content should be excluded because its probative value is substantially outweighed by the risk of unfair prejudice.

In the Court's view, for the reasons stated by Defendants, evidence of Plaintiff's blood alcohol content, along with Dr. Forney's testimony interpreting those test results, is relevant and may be used for impeachment purposes if Plaintiff's ability to accurately recall what happened that evening is at issue. The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Plaintiff is free to challenge the accuracy of the test results and of Dr. Forney's conclusions, and to point out the alleged inconsistency with the breathalyser test results. In addition, the Court will give a limiting instruction to ensure that the jury considers evidence of Plaintiff's blood alcohol content only for the purposes of impeachment, and not for the purpose of determining whether Defendants used excessive force. The Court therefore **DENIES** Plaintiff's motion to exclude testimony of Dr. Robert Forney and evidence related to Plaintiff's blood alcohol content.

C.      **Defendants' Motions in Limine**

1.      **To Exclude References to the <u>Graham v. Connor</u> Test**

In <u>Graham v. Connor</u>, 490 U.S. 386 (1989), the Supreme Court held that in determining whether a particular seizure is "objectively reasonable" under the Fourth Amendment, one must

balance the nature and quality of the intrusion against the countervailing governmental interests at stake.  The Court held:

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. at 396 (internal citations omitted).  The ultimate question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397.

Defendants seek to exclude all references to the Graham v. Connor test.  They first argue, as they previously have, that because the arresting officers had transferred custody of Plaintiff to the Circleville officers, Plaintiff was a pretrial detainee, and thus the Fourteenth Amendment's "shocks the conscience" standard, rather than the Fourth Amendment's "objective reasonableness" standard, applies.  Plaintiff correctly notes that this issue has already been decided.  In its January 23, 2008 Memorandum Opinion and Order, this Court found that because Plaintiff was in the joint custody of the arresting officers and the booking officers when the alleged excessive force was used, the Fourth Amendment applied to Plaintiff's claims.

The opinion was affirmed by the Sixth Circuit on appeal.  The Sixth Circuit found it unnecessary to decide whether the Fourth or Fourteenth Amendment applied since, viewed in a light most favorable to Plaintiff, Defendants' conduct was unconstitutional under either standard.  See Harris v. City of Circleville, 583 F.3d 356, 365 (6th Cir. 2009).  In his concurring opinion, in discussing the issue of qualified immunity, Judge Clay noted that although the law may not have

been fully settled in 2004 when Plaintiff was injured, the Sixth Circuit recently decided <u>Dragosch</u> <u>v. Metcalf</u>, 557 F.3d 372 (6th Cir. 2009), holding that the Fourth Amendment governs until the time of the preliminary hearing when a court makes an initial determination of probable cause. Judge Clay stated that "<u>Dragosch</u> dictates that the Fourth Amendment applies to a suspect's excessive force claims throughout and even beyond the booking process regardless of whether the suspect remains in the custody of the arresting officers." <u>Harris</u>, 583 F.3d at 373 (Clay, J., concurring).

The Fourth Amendment's "objective reasonableness" standard therefore applies to Plaintiff's claims. In their reply brief, Defendants argue that even if this Court decides that the Fourth Amendment is applicable, a strict application of the three factors set forth in <u>Graham</u> is not. <u>Graham</u> involved an investigatory stop and arrest and, according to Defendants, strict application of the test developed in that case is nonsensical when the alleged use of force takes place against a pretrial detainee.

There is some support for Defendants' position. The Ninth Circuit has noted that when the alleged use of force occurs in the context of a pretrial detention, some, but not all, of the <u>Graham</u> factors will be relevant. <u>See</u> <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1197 n.21 (9th Cir. 2002); <u>Lolli v. County of Orange</u>, 351 F.3d 410, 415 n.4 (9th Cir. 2003). Clearly, whether the detainee poses an immediate threat to the officers or others at the jail is still a relevant consideration in determining how much force is reasonable. However, because the detainee has already been arrested and is in custody, there is no need to determine "whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396.

Defendants also argue that, once the individual is in custody, the severity of the crime allegedly committed is no longer relevant because jail rules apply equally to all detainees.

According to Defendants, once the arrest is completed and the individual is brought to the jail for booking, different considerations come into play. Jail officers have a duty to insure the detainee's presence at trial and to preserve order and discipline at the jail, and are therefore entitled to use some degree of force against any detainee who fails to comply with orders. See Martucci v. Johnson, 944 F.2d 291, 294 (6th Cir. 1991) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).

The Court agrees with the Ninth Circuit that a strict application of the Graham factors is not appropriate in analyzing the objective reasonableness of the use of force against a pretrial detainee. This is not to say that the three factors are completely irrelevant, but certain modifications need to be made. For example, although there is no need to consider whether the detainee is "actively resisting arrest or attempting to evade arrest by flight," surely a jury may consider whether the detainee is complying with the officer's orders. Moreover, in the Court's view, the severity of the crime may still be relevant. If the nature of the crime allegedly committed tends to show a propensity for violence, this factor could be considered in determining whether the use of force against a pretrial detainee is objectively reasonable.

In addition, the countervailing governmental interests at stake in the jail setting may differ somewhat from the countervailing governmental interests at stake during an investigatory stop. Therefore, other factors may need to be considered in determining whether a particular use of force is objectively reasonable.

For the reasons stated above, the Court **DENIES** Defendants' motion to exclude references to the Graham v. Connor test. Nevertheless, the Court agrees that certain modifications are needed. Therefore, the Court strongly urges the parties to consider what factors are relevant in determining whether a particular use of force against a pretrial detainee is "objectively reasonable" under the

Fourth Amendment, and to incorporate those suggestions in their proposed jury instructions.

**2.      To Limit Testimony of Patricia Rice**

Defendants seek to exclude several categories of testimony by Patricia Rice, the civilian employee who finally persuaded jail officials to seek medical treatment for Plaintiff.  First, Defendants argue that Rice should not be permitted to testify about her belief that she was harassed and treated unfairly by three co-workers, none named as defendants in this suit.  Defendants also argue that Rice should not be permitted to testify that she quit her job because of the allegedly unprofessional environment at the jail. According to Defendants, this information is irrelevant and would unduly prejudice the jury.  Plaintiff does not intend to question Rice about these topics, but reserves the  right to elicit explanations from her if Defendants open the door by suggesting that she is a disgruntled former employee or that she left her employment for performance-related reasons. The Court therefore **DENIES AS MOOT** this portion of Defendants' motion.  This issue may be revisited if it arises at trial.

Next, Defendants urge the Court to prohibit Rice from testifying that coworkers Corporal Stephanie Kinser, Jennifer Gregg, and Candy Foulton often referred to the prisoners as "whores, sluts, bitches, assholes." (Rice Dep. at 14, 17-18).  Defendants argue that this evidence is irrelevant. Rice admitted that she never heard any of the Defendants make these kinds of comments, and there is no evidence that Plaintiff was called any of these names by anyone on the night in question. Defendants also argue that whatever slight probative value this evidence may have is substantially outweighed by the danger of unfair prejudice.

Plaintiff argues that even though Defendants themselves may not have made derogatory comments about the prisoners, Rice's supervisor, Corporal Stephanie Kinser, did.  Although Rice

complained to Chief Gray and Lieutenant Gaines, nothing was done to stop it. (Rice Dep. at 14-15). Plaintiff argues that the evidence is relevant because it shows that this language was pervasive and was tolerated by jail officials. According to Plaintiff, this, in turn, it helps explain Defendants' treatment of him.

The Court agrees that this testimony is slightly relevant in that it indicates a general culture of disrespect for the detainees. In this case, however, the relevance of this testimony is substantially outweighed by the danger of unfair prejudice. There is a substantial risk that the jury would unfairly attribute these derogatory statements to Defendants even though there is absolutely no evidence that they ever called anyone, including Plaintiff, by these names. Pursuant to Federal Rule of Evidence 403, the Court therefore **GRANTS** Defendants' motion to exclude testimony that other jail employees often made derogatory comments about prisoners at the Circleville jail.

Finally, Defendants ask the Court to prohibit Rice from testifying that Defendants treated Plaintiff differently because, unlike the "country blacks" who lived around Circleville, Plaintiff was a "city black man with a different attitude, different dress, different mannerisms." (Rice Dep. at 52). Defendants also ask the Court to prohibit Rice from testifying that they treated Plaintiff differently because of his "cocky" attitude.

Defendants argue that this testimony is not based on Rice's personal knowledge and must be excluded. In short, Rice does not know what they were thinking or what motivated their conduct that evening. She does not allege that Defendants made any statements about Plaintiff being from out of town or about Plaintiff having a "cocky" attitude. Therefore, her testimony is based on nothing but speculation. Defendants argue that "[w]hile Ms. Rice may be competent to testify regarding her opinion of Plaintiff's behavior and what actions the officers took, she is not competent

to testify as to what the officers actually perceived, thought of Plaintiff's behavior or were reacting to." (Mot. in Limine at 5).

In response, Plaintiff argues that Rice's testimony concerning Defendants' treatment of Plaintiff is based on her personal knowledge and her personal observations. Based on her experience at the jail, she is qualified to testify about how Plaintiff was treated differently than other detainees, including other African-American detainees. In addition, because she witnessed the incident in question, she is qualified to testify about her observations of Plaintiff's behavior and her perception that his "cocky" attitude bothered Defendants.

The Court **GRANTS IN PART and DENIES IN PART** Defendants' motion to prohibit Rice from testifying that she believed that Plaintiff was treated differently because he was a "city black man" with a "cocky" attitude. The Court agrees that Rice lacks personal knowledge of Defendants' subjective reasons for allegedly treating Plaintiff differently than other detainees. Therefore, she cannot testify about Defendants' motivation for behaving the way they did. Nevertheless, she is qualified to testify about what she observed that evening and about how Plaintiff was treated compared to other detainees. A jury is entitled to draw its own conclusions about Defendants' motivation.[3]

### 3.    To Prohibit Duplicative Testimony

Plaintiff has two expert witnesses, Dr. Geoffrey Alpert and Timothy Dimoff, on the use of force. According to Defendants, both relied on the same evidence and reached the same conclusions

---

[3] With respect to Plaintiff's equal protection claim, Defendants also question the relevancy of Rice's testimony that "city blacks" were treated differently than "country blacks." Because the issue of relevancy was raised for the first time in a reply brief, the Court will not consider it now.

-- Plaintiff was not given sufficient time to comply with Defendants' commands, and Defendants failed to seek prompt medical attention for him. Defendants maintain that the testimony of these two experts is needlessly cumulative, and that the testimony of one should therefore be excluded under Federal Rule of Evidence 403. See also Bowman v. Corrections Corp. of Am., 350 F.3d 537, 547 (6th Cir. 2003) (holding that a district court may exclude testimony of an announced expert witness if it is cumulative or redundant).

Plaintiff denies that he will elicit duplicative testimony. Dr. Alpert is a national consultant who will testify about the use-of-force continuum used by police departments across the United States. Mr. Dimoff, on the other hand, will testify about the use-of-force training Defendants received at the Ohio Peace Officer Training Academy.

Plaintiff is not necessarily limited to only one expert witness on the topic of use-of-force. Although the expert witness reports of Dr. Alpert and Mr. Dimoff appear to reach similar conclusions, the Court cannot conclusively determine at this point whether their testimony will be cumulative. The Court will **RESERVE RULING** on this motion and make a determination based on the expert witness testimony presented by Plaintiff at trial.

### III.    Conclusion

For the reasons set forth above, the Court:

- **OVERRULES** Defendants' Objections to Magistrate Judge Kemp's Order Granting Plaintiff's Motion for Leave to Disclose an Additional Expert Witness (Doc. 157);

- **GRANTS** Plaintiff's Motion in Limine to Exclude Evidence Related to Plaintiff's Conduct Prior to Arriving at the Circleville Jail (Doc. 144);

- **GRANTS** Plaintiff's Motion in Limine to Exclude Argument of Testimony that Plaintiff Did Not Suffer Physical Harm as a Result of Being Dragged to His Cell or by the Delay in Providing Him with Medical Attention (Doc. 145);

- **DENIES AS MOOT** Plaintiff's Motion in Limine to Exclude Evidence of BCI or FBI Investigation (Doc. 146);

- **DENIES** Plaintiff's Motion in Limine to Exclude Argument or Testimony Regarding Plaintiff's Cervical Stenosis (Doc. 147);

- **DENIES AS MOOT** Plaintiff's Motion in Limine to Preclude Irrelevant Testimony Regarding Plaintiff's Children (Doc. 148);

- **DENIES** Plaintiff's Motion in Limine to Exclude Testimony of Dr. Robert Forney and Any Evidence Related to Plaintiff's Blood Alcohol Content (Doc. 149);

- **DENIES** Defendants' Motion in Limine to Exclude References to the <u>Graham v. Connor</u> Test (Doc. 153);

- **GRANTS IN PART and DENIES IN PART** Defendants' Motion in Limine to Limit Testimony of Patricia Rice (Doc. 154); and

- **RESERVES RULING** on Defendants' Motion in Limine to Prohibit Duplicative Testimony (Doc. 155).

**IT IS SO ORDERED.**

Date: March 5, 2010

**/s/ John D. Holschuh**
John D. Holschuh, Judge
United States District Court